## REEVES *vs.* KIMBALL.

K. contracted, in writing, to sell a lot of land to F. The latter being unable to pay for it, applied to the defendant to advance the purchase money and take a deed of the land from K.; and give F. a contract for a deed to be executed on payment of the purchase money advanced, with interest. The defendant advanced $600, and took a deed of the land. On the 2d of March, 1857, he gave a contract to F., agreeing to convey the land to him on payment of $600 and interest. F. was in possession of the land. On the 12th of March, 1857, F. applying to the defendant for further advances, it was agreed between them that the defendant should retain the title of the land until he should be paid such other sums as he might let F. have, or become holden for. Such further advances were made, by the defendant, March 1st, 1859. On the 21st of April, 1859, F. sold and assigned the contract of March 2, 1857, to the plaintiff, a part of the consideration being the amount due upon certain notes of F. on which the plaintiff was indorser, and of which he assumed the payment. The plaintiff went into possession of the premises, and continued therein, making payments, from time to time, of interest accruing upon the contract. There was no evidence that the plaintiff purchased the contract with any fraudulent design; and he had no notice of any lien of the defendant, beyond the purchase money.

*Held,* 1. That the plaintiff was a *bona fide* purchaser; and that his agreement to assume the payment of the notes of F. was parting with value, so as to make him a *bona fide* holder for value paid.

2. That the defendant had a better right to retain the title of the premises until his advances, made in pursuance of the agreement of March 12, 1857, were paid, than the plaintiff to a deed of the premises on paying the unpaid purchase money, only.

3. That the defendant's equity was superior to that of the plaintiff, because it was the oldest in time, and was so far superior as to override the rights and equities of the plaintiff as a *bona fide* purchaser for value.

Reeves *v.* Kimball.

4. That the principle laid down in *Bush* v. *Lathrop*, (22 *N. Y.* 535,) was decisive of this case.

5. That there was no *estoppel* in the case, as against the defendant.

THIS was an appeal by the plaintiff from a judgment entered on the report of a referee. The action was brought by the plaintiff to compel the specific performance of a contract for the sale of a lot of land, in Brownville, Jefferson county. The premises had been owned in fee by one Joseph Knowlton, and were by him contracted to be sold to one Chester Folsom. Folsom being unable to pay for them, applied to the defendant to advance the purchase money and take a deed of the land from Knowlton; give said Folsom a contract whereby the said defendant should agree to give him (Folsom) a deed, on payment of the money advanced, and interest. The defendant, in pursuance of such arrangement, advanced the sum of $600, and took a deed of the land. On the 2d of March, 1857, the defendant, in further compliance with the said arrangement, gave a contract to said Folsom, agreeing to convey said land to him on payment of the sum of $600 and interest, at the times and in the manner mentioned in the said contract. Folsom was in possession at the date of the contract, and continued therein until he transferred the possession to the plaintiff, as hereinafter stated. A few days after the date of said contract, and about the 12th of March, 1857, Folsom applied to the defendant for further advances, and it was then agreed between them that the defendant should retain the title of said premises until he should be paid such other sums as he might subsequently let him (Folsom) have, for his note, or become holden for by indorsement or otherwise, for him. The defendant, in conformity with the arrangement, and on or about the 1st of March, 1859, advanced to Folsom $50, and took from him two notes, with one Knowlton as surety, for 201.78. This was made up of the $80 advanced as aforesaid, a note for $25, $84 for two years' interest on the

contract price of the land, and a book account against said Folsom and one Gardner. When this arrangement was made, Folsom applied to the defendant for an extension of the time of payment for one year, informing the defendant that the plaintiff was going to assist him pecuniarily, and he wanted the extension for that purpose.

On the 21st of April, 1859, Folsom sold and transferred the contract of the 2d of March, 1857, to the plaintiff, and the plaintiff, in payment thereof, assumed to pay certain notes on which he was then indorser. The plaintiff went into possession of the premises, and has remained in possession ever since, making payments on the contract, from time to time, of interest accruing thereon. The plaintiff had no notice at the time of the purchase of the contract, of the arrangement between Folsom and the defendant, that he (the defendant) should hold the title as security for further advances. But the referee finds, as a question of fact, that the plaintiff knew at that time that the defendant did make further advances to Folsom. The plaintiff was not aware of the arrangement between the defendant and Folsom, as to future advances, until after he called on the defendant for a deed. The referee ordered judgment for the defendant; holding, as matter of law, that the plaintiff was not a *bona fide* purchaser of the contract, not having taken it in payment of a precedent debt; that the defendant's equity was older, and therefore better, than that of the plaintiff; and that the defendant was therefore entitled to hold the title until he was paid the sum of $134, parcel of the $201.25 above mentioned. The referee rejected the balance of the said sum, because it was not advanced within the true intent and meaning of the contract.

*F. W. Hubbard,* for the appellant.

I. The referee found, as a matter of fact, that the plaintiff acted in good faith; that he had no knowledge of the agreement of the 12th March, 1857, between the defend-

ant and Folsom, until after the tender made by him in March, 1861; that he purchased the contract, and took possession of the land, on the supposition that he would receive a conveyance upon the fulfillment of the contract according to its terms.

II. The referee erred in not finding that the defendant, at the time of the extension of the contract in March, 1859, was informed of the intention of Folsom to assign the contract to the plaintiff. The fact is testified to by Folsom, and not denied by the defendant. Had the referee found the fact according to the evidence, the defendant would have been *estopped* from alleging any claim under the agreement of the 12th of March as against the plaintiff.

III. The referee erred in deciding "that the plaintiff was not a *bona fide* purchaser of the contract, on the ground that he parted with no value for the transfer—that it was taken in payment of a precedent debt." The referee has misapprended the testimony. There was no precedent debt due from Folsom to the plaintiff. The purchase was absolute, and the consideration paid in the three notes of the plaintiff, of $262 each.

IV. The referee erred in deciding, "that the plaintiff purchased and took the assignment of the contract subject to all the equities existing at the time between Folsom and the defendant." Also, "that the assignment of the contract was the assignment of a mere *chose in action*, with all its incidents and equities. It is insisted that the learned referee has misconceived the nature of the right or estate, which Folsom, by the assignment, transferred to the plaintiff. A contract for the purchase of land is something more than a mere *chose in action*. By the settled doctrine of *equitable conversion*, the purchaser is vested with an *estate in the land;* in equity he is regarded as the *owner*, and the vendor as his trustee of the legal title. (*Will. Eq. Jur.* 610. 21 *N. Y.* 585.) Equity regards the estate as realty, and as such it will descend to the heirs of the ven-

dee. (*Champion* v. *Brown*, 6 *John. Ch.* 402. *Will. Eq.* 298.) The statute of descents proceeds on the same principle. This estate of a vendee is not a *chose in action*, in any sense. The interest of the vendor in the contract may be so regarded. A *chose in action* is defined to be a personal right, not reduced to possession, but recoverable by a suit at law. (1 *Burrill's Law Dic.* 213.) It is insisted, therefore, that the referee erred in applying the doctrine in regard to the assignment of choses in action to this case. The plaintiff taking the transfer of the contract in good faith, and for a valuable consideration, took it discharged of any *latent equity* of the defendant.

V. The referee held, "that the defendant, at the time of the transfer of the contract to the plaintiff, had an equitable interest or mortgage of the premises by virtue of the agreement of March 12th, 1857, for the amount of the money advanced and liability incurred after that date. Upon this theory the defense is not maintainable, because the equity of the plaintiff is superior. The contract was assignable, by its terms, and it was the duty of the defendant, if he wished to protect himself against an assignee, *to have engrafted his equity or agreement on the face of the contract.* He must see to it that an assignee has actual notice of his equities. As Folsom was in possession of the land, there is no ground for alleging constructive notice. Tho plaintiff was not bound to inquire of the defendant whether he had any claim on the land, aside from the contract. An equitable mortgage will be defeated by a creditor advancing money in good faith. (22 *Law Lib.* 133. 2 *Story's Eq.* § 1020, *and note. Will. Eq.* 441.)

VI. The defendant is *estopped* by the terms of the contract from setting up his equitable mortgage or claim. He agrees to give a warranty deed to Folsom or his assigns upon the payment of the consideration money expressed, without any other condition. The plaintiff has a right to rely on this as a representation that the defendant has no other

claim against the land. The defendant put his vendee into the possession of the land, and we found him in possession under this contract, when we purchased. It would be great injustice to permit the defendant now to escape the consequences of his acts, upon the faith of which we have acted. The referee avoids this estoppel by holding that the plaintiff was not a purchaser *bona fide,* because he did not pay value.

VII. The defendant should be *estopped* by his omission to inform the plaintiff of his claim upon the land. The parties had several interviews concerning the matter, and no intimation came from the defendant that he had any claim outside the contract. (3 *Hill,* 219.) The plaintiff paid the interest to the defendant on the theory that the contract was all he had to pay. Had the defendant informed him of his claim, it is to be presumed that he would have protected himself as against Folsom.

VIII. It is insisted that the defendant, when he took the two notes of Folsom in March, 1859, did not rely on the agreement of March, 1857, as his security for their payment, because he required and Folsom gave him the name of Knowlton as security.

IX. If the defendant is right in the theory of his defense the referee erred in ordering the plaintiff to pay the $84, which was the amount of two years' interest indorsed on the contract, March, 1859. That indorsement imported a cash payment. The plaintiff had no knowledge that it was put into one of the two notes when he purchased the contract. He relied, as he had a right to, on the truth of that indorsement. The defendant should be precluded from now alleging that the money was not in fact paid. It would be absurd to hold that the plaintiff was bound to inquire of the defendant whether his indorsement was truthful. Again, the $84 was erroneously allowed the defendant by the referee, because it was not within the scope of the agreement of the 12th March, 1857 ; it was not an

advance of money from the defendant to Folsom. The judgment should at least be modified in this respect.

X. The whole equity of the case is plainly with the defendant. He bought the contract in good faith, paid all the land was worth, and is without remedy if the defense prevails, and must lose several hundred dollars. On the other hand, the defendant has his debt against Folsom secured by the name of Knowlton as surety. If the plaintiff is compelled to pay the $134 adjuged against him, he cannot be subrogated to the right of the defendant against Knowlton. Payment by the plaintiff would substantially be payment by Folsom, the principal debtor.

*B. Bagley*, for the respondent.

I. An assignee of a contract takes it subject to all existing equities in favor of the other party against the assignor, although such assignee may not have received any notice of such equities at the time. (*See the opinion of Judge Strong, in Wood* v. *Perry*, 1 *Barb.* 131 ; 1 *Comyn on Contracts*, 197.)

II. The plaintiff Reeves stands in the same position in relation to the defendant, that Folsom would if he had not assigned the contract. (*See cases last cited.*)

III. If Folsom would have been compelled to pay the future advances under the agreement of the 12th of March, 1857, before he could exact a deed, then the plaintiff was bound to pay them.

IV. When Kimball took the two notes, $100 and $101.75, and advanced the $50, and included $84 of interest on the contract, he acted upon the faith of the agreement of the 12th of March, knowing that he had a right to exact it before he could be compelled to give a deed.

V. When the defendant took the notes and gave the extension of the contract, he was told by Folsom that Reeves was to take care of the notes.

VI. Reeves agreed to indorse the notes of Folsom up to $800, and he only indorsed $600. If he had taken care of these notes, he would have fulfilled his agreement.

*By the Court,* MULLIN, J.   The important question in this case is, whether the defendant has a better right to retain the title of the premises in question until he is paid his advances made in pursuance of the agreement of the 12th of March, 1857, than the plaintiff to a deed of said premises on paying the unpaid purchase money only. The agreement that such advances should be a lien on the property, was made over two years before the plaintiff acquired any interest whatever in the contract or premises. Folsom was left in possession of the contract and sold the same, for a valuable consideration, to the plaintiff, who did not then know of the arrangement that future advances should be a lien on the contract or the title. The plaintiff went into possession after his purchase, paid interest on the contract, and the defendant knew that the plaintiff was going to assist Folsom pecuniarily, and that he (Folsom) wanted the extension for that purpose. In other words, the defendant was informed, on the 1st of March, 1859, that the contract of the 2d of March, 1857, or the premises covered by it, were to be used in some way to secure the plaintiff for advances about to be made to Folsom. The defendant is entirely silent in regard to any claims he has beyond the amount specified in the contract, suffers the plaintiff to go into possession, and pay interest for some eighteen months, and now insists that his is a superior equity to the plaintiff's, by which he can hold the title until his advances are paid. It is probable that all the advances claimed by the plaintiff were made before any equity of the defendant attached. If so, then the latter is only chargeable with keeping silence when, by speaking, he could have prevented the plaintiff from being led into the purchase of the contract. But before

entering on these investigations of these equities, it is important to ascertain whether the plaintiff was a *bona fide* purchaser for value paid. If he was not, that puts an end to any equity he may have to relief. There is no evidence that the plaintiff purchased with any fraudulent design. I have already remarked that he had no notice of any lien of the defendant, beyond the purchase money. And the knowledge that he had made advances to Folsom after the 2d of March, 1857, cannot, it seems to me, be construed into notice of the lien, or of the agreement that he (the defendant) should have a lien for such advances.

It only remains to inquire whether he was a purchaser for value paid. The referee found that he was not, having taken the contract in payment of a precedent liability. The contract was to be paid for "*by applying,*" as the referee found, "*the same towards the payment of certain notes of said Folsom which had been indorsed by said Reeves.*" By this language, I understand the referee to mean that the plaintiff assumed to pay certain notes which had been previously made by Folsom and indorsed by the plaintiff, in payment of the purchase price of the land contract. If such are the facts, it follows that, before the purchase of the contract, the plaintiff was the surety of Folsom for an amount equal to the purchase price of the contract. He was indorser, contingently liable if the paper had not matured, absolutely liable to the holder if the proper steps had been taken to charge him. In either case, Folsom was liable over to him if he paid the notes. By the agreement of purchase he ceased to be a surety; he became the principal debtor, as between him and Folsom, and absolutely bound to pay the notes, whether he was or was not charged as indorser. There was no precedent debt due from the plaintiff to Folsom. If he had been charged as indorser he did owe the holder, but it was not his own debt he paid when he paid the note, so far as Folsom was concerned. I see no way in which the transaction can be

treated as the payment of a precedent debt or liability, in that sense which deprives him of the character of a purchaser for value. It seems to me he was most clearly a *bona fide* purchaser, and that his agreement to assume the payment of the notes was parting with value, so as to make him a *bona fide* holder for value paid.

The next most important question is, is the defendant's equity superior to that of the plaintiff, because it is the oldest in time; and is such equity so far superior to that of the plaintiff as to override the rights and equities of the plaintiff, being a *bona fide* purchaser, for value? The case of *Bush* v. *Lathrop* (22 *N. Y.* 535) would seem to be decisive of the question. In that case the law is declared to be that the equities existing between assignor and assignee of a chose in action, not negotiable, attend the title transferred to a subsequent assignee for value and without notice. The latter takes the exact position of his vendor. The parties do not stand in the relation stated in the proposition; but the reasoning of the learned judge who gave the opinion in the case, cited by him to sustain himself, shows that the principle was intended to reach and apply to parties occupying the relation of the plaintiff and defendant in this case.

While the law undoubtedly is as stated by Judge Denio in the case cited, I must nevertheless say that it does not commend itself to my sense of right and justice. When a vendor of land agrees to make advances to the vendee, which, by an independent arrangement, are to be a lien on the land, and leaves the contract in the vendee's hands, and the same is sold to a *bona fide* purchaser for value paid, without notice, the equities of the latter are, it seems to me, with the most profound respect for the learned judge who has put forth the converse of the proposition as the law, superior to those of the vendor, and should be upheld. If I am right in supposing the principle sug-

gested applies to this case it is decisive of it, and the judgment must be affirmed.

There is no estoppel in the case. The defendant was not bound to find the plaintiff and notify him of his rights. Folsom knew all about his rights, and it was his duty to disclose the facts to the plaintiff. Had the plaintiff called on the defendant before the purchase of the contract and communicated to the defendant that he was about to purchase the contract, it would have been the defendant's duty to speak, and his silence would have estopped him. I am of opinion the judgment is right and should be affirmed.

Judgment affirmed.

[OSWEGO GENERAL TERM, July 14, 1863. *Mullin, Morgan* and *Bacon,* Justices.]